UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CRIMINAL ACTION NO. 12-cr-00085-KSF

UNITED STATES OF AMERICA                                                        PLAINTIFF

v.                                        **OPINION & ORDER**

DARRELL D. JOHNSON                                                   DEFENDANT

\* \* \* \* \* \* \* \* \* \*

This matter is before the Court upon the motion by Defendant, Darrell D. Johnson, to suppress and exclude the fruits of a March 29, 2012 search of his residence pursuant to a search warrant that he alleges was unlawful [DE 13]. Specifically, Defendant argues that the search warrant failed to establish probable cause and thus the search of his residence and the seizure of the physical evidence obtained during the search violated his rights under the Fourth Amendment to the United States Constitution. The United States has filed a response in opposition to the motion [DE 16]. Although Defendant has requested a hearing on his motion, there are no questions of fact raised by Defendant's motion to suppress. Rather, the issues presented are purely legal in nature and are adequately presented to the Court by the briefs filed by the parties. Thus, no hearing is necessary and, accordingly, this matter is ripe for review.

I.       **FACTUAL BACKGROUND**

The relevant facts are not in dispute. On July 5, 2012, Defendant was indicted on two drug trafficking charges and a Forfeiture Allegation. The two counts of the Indictment allege that, on May 29, 2012, in Montgomery County, in the Eastern District of Kentucky, Defendant knowingly and

intentionally possessed with intent to distribute pills containing oxycodone, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) (Count I), and a mixture or substance containing cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) (Count II). The Forfeiture Allegation seeks the forfeiture of $56,706.26, pursuant to 21 U.S.C. § 853.

The evidence in this case includes evidence of two separate controlled transactions between a confidential informant ("CI") and Defendant on March 27 and March 29, 2012, as well as the fruits of a subsequent search of Defendant's home on March 29, 2012. The officers in this case conducted their search of Defendant's home at 155 Sky View Drive, Mount Sterling, Kentucky, after a Montgomery District Judge signed a search warrant on March 29, 2012. The Affidavit included in the search warrant, sworn by Mt. Sterling Det./Sgt. Jimmy Daniels, provided that the basis for the search warrant for Defendant's home was surveillance of Defendant conducted by a combination of police officers from the Winchester, Kentucky Police Department and the Mount Sterling, Kentucky Police Department between March 27, 2012 and March 29, 2012.

According to the Affidavit, officers from the Narcotics Unit of the Winchester Police Department arranged for a CI to purchase five (5) 30 mg oxycodone pills from Defendant on the morning of March 27, 2012 at Lykins Park in Winchester, Kentucky. The Affidavit states that officers from the Mount Sterling Police Department's Narcotic Unit began conducting surveillance of 155 Sky View Drive in Mount Sterling on March 27, 2012 at 9:30 a.m. According to the Affidavit, after the CI contacted Defendant and arranged a meeting to purchase pills, the officers conducting surveillance of 155 Sky View Drive observed a black male matching Defendant's description and wearing blue jeans and a red sweatshirt exit the home and get into a beige car that was parked in front of the home. Per the Affidavit, the officers observed the beige car travel to

Lykins Park, where Defendant sold oxycodone to the CI. The transaction at Lykins Park was recorded via a recording device worn by the CI. The Affidavit states that the officers continuously watched the beige car for the duration of the trip from 155 Sky View Drive to Lykins Park and that the car did not make any stops. Defendant was not arrested at that time.

The Affidavit further provides that detectives from the Mount Sterling Police Department conducted surveillance on 155 Sky View Drive again on March 29, 2012. During the surveillance, the officers observed several vehicles pull into the parking lot, subjects walk in and, a brief time later, come back out of the residence and leave. That morning, beginning at around 10:50 a.m., the officers arranged for a second controlled purchase of pills using the same CI. According to the Affidavit, two officers in place at 155 Sky View Drive observed a black male exit the residence and get into the same beige car. A detective followed the vehicle continuously from 155 Sky View Drive to the Kroger Center parking lot, where the CI allegedly purchased six (6) additional oxycodone 30 mg tablets from Defendant. Officers located at the Kroger Center parking lot arrested Defendant after the drug transaction.

On March 29, 2012, at around 11:50 a.m., Det./Sgt. Jimmy Daniels swore out the Affidavit and sought a search warrant for 155 Sky View Drive. A Montgomery District Judge signed the search warrant on March 29, 2012, thereby authorizing the immediate search of the residence at 155 Sky View Drive. During the search of 155 Sky View Drive, officers seized pills, cocaine, cash, baggies, a scale and a number of other items. The current Indictment then followed.

I. **WHETHER THE SEARCH WARRANT IS SUPPORTED BY PROBABLE CAUSE**

Defendant has now filed a motion to suppress and exclude the fruits of the March 29, 2012 search of his residence on the grounds that the search warrant was unlawful [DE 13]. Specifically,

Defendant argues that there was not probable cause for the search warrant because the Affidavit submitted in support of the search warrant failed to establish a sufficient nexus between the two controlled buys by the CI and Defendant's residence. According to Defendant, because both of the drug transactions involving the CI took place away from Defendant's residence and there is no mention in the Affidavit of any credible connection that a crime had occurred at the residence or that drugs were located inside the residence, the Montgomery District Judge lacked the authority to issue the search warrant.

Defendant's claims are based on the Fourth Amendment to the Constitution, which states that "[t]he rights of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S.Const. amend. IV. The Supreme Court has held that when determining whether probable cause for a search exists, the judge issuing the warrant must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). The duty of a reviewing court, such as this Court, "is simply to ensure that the magistrate had a 'substantial basis' for concluding that probable cause existed." *Id*. Generally, a state court judge's determination of probable cause is to be afforded "great deference" and should be scrutinized in a "realistic and commonsense" manner. *United States v. Algie*, 721 F.2d 1039, 1041 (6th Cir. 1983).

4

With respect to the required nexus between the place to be searched and the evidence of criminal activity sought, *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008) is instructive. As noted by the Sixth Circuit in *Williams*, "the courts should take a totality of the circumstances approach in their review of the affidavit, and the courts may afford 'considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found and [the courts are] entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the crime and type of offense.'" *Id*. (quoting *United States v. Bethal*, 245 Fed.Appx. 460, 465 (6th Cir. 2007)(unpublished))(quoting *United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir.1996)(citations and internal quotation marks omitted)). Although the defendant in *Williams* argued that the warrant application did not establish a nexus between the evidence of defendant's crime involving handguns and a residence, the Court pointed out that the defendant "overlooks the Government's logical, and indeed legally correct, assertion that 'it is reasonable to suppose that some criminals store evidence of their crimes in their homes, even though no criminal activity or contraband is observed there.'" *Id*. at 686-687. The Court further explained

> A magistrate may infer a nexus between a suspect and his residence, depending upon "the type of crime being investigated, the nature of things to be seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places." *United States v. Savoca*, 761 F.2d 292, 298 (6th Cir.1985); *see United States v. Hodge*, 246 F.3d 301, 305-06 (3d Cir.2001)(noting that a court "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense," and holding that it was reasonable to infer that a suspected drug dealer would keep evidence of his crime at his residence (citation omitted)); *United States v. Jackson*, 756 F.2d 703, 705 (9th Cir.1985)(holding that it was a reasonable inference that a bank robber would keep stolen currency in his residence despite the passage of more than two months between the time of the robbery and the search).
>
> In a recent line of cases, we have held that an issuing judge may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking.

> *See, e.g., United States v. Miggins*, 302 F.3d 384, 393-94 (6th Cir.2002); *see also United States v. Gunter*, 266 Fed.Appx. 415, 419 (6th Cir.2008)(unpublished decision)(noting that our precedents establish that there is a nexus between a drug dealer's criminal activity and the dealer's residence when there is reliable evidence connecting the criminal activity to the residence); *United States v. Newton*, 389 F.3d 631, 636 (6th Cir.2004), vacated in part on other grounds, 546 U.S. 803, 126 S.Ct. 280, 163 L.Ed.2d 35 (2005) (holding that in cases involving drug traffickers engaged in "continuing operations," the "lack of a direct known link between the criminal activity and the residence[ ] becomes minimal"); *United States v. Caicedo*, 85 F.3d 1184, 1192-93 (6th Cir. 1996)(holding that there was probable cause based on an affidavit that stated, in the affiant's experience, many drug traffickers use their residences to conduct their drug trafficking activities). *But cf. United States v. Schultz*, 14 F.3d 1093, 1097-98 (6th Cir. 1994)(holding that a search warrant should not have issued where the officer seeking the warrant had nothing more than a guess that contraband or evidence of a crime would be found in a drug trafficker's safe deposit box).

*Id*. at 687. In *Williams*, the Court found that "the warrant application demonstrated 'continuing and related illegal firearm activity,' from which the issuing judge could infer that evidence pertaining to the handguns would be found in [the defendant's] residence." *Id*.

Here, the Affidavit provides a detailed description of the controlled drug purchases between the CI and Defendant and adequately links Defendant's criminal activity to his residence. As detailed in the Affidavit, on two separate occasions, the officers observed Defendant leave the residence and drive directly to meet with the CI and sell drugs to the CI, leading to the reasonable conclusion that Defendant was keeping drugs in his home. The Affidavit also states that, during the surveillance of the house on March 29, 2012, several vehicles were observed pulling into the parking lot, subjects walking into the house and coming out a brief time later. Although Defendant relies on the fact that the two drug transactions involving Defendant and the CI took place away from Defendant's residence, this fact does not necessarily invalidate the search of the house. *See United States v. Jones*, 159 F.3d 969, 974-75 (6th Cir. 1998)(although affidavit submitted in support of

warrant referred to incidents taking place on the premises rather than inside the house, this does not invalidate search of the house, as the statements supporting the search warrant "and the fact that '[i]n the case of drug dealers, evidence is likely to be found where the dealers live,' *United States v. Lamon*, 930 F.2d 1183, 1188 (7th Cir. 1991)(quotation omitted), support a finding of probable cause to support the issuance of the warrant."). Here, as detailed in the Affidavit, the continued surveillance revealed that Defendant was arranging the deals from his home and proceeded directly from his home to the transactions, leading to the logical - and permissible - conclusion that the drugs themselves were being kept in the residence. *See United States v. Adkins*, 429 Fed.Appx. 471, 482 (6th Cir. 2011)("The police officers' first-hand observations of contraband circumstantially linked to Defendant's residence provide sufficient basis for a magistrate judge to conclude that there was "a fair probability that contraband or evidence of a crime will be found in [Defendant's residence].")(unpublished)(quoting *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006)).

Considering the totality of the circumstances, the information contained within the Affidavit provides a sufficient nexus between the drug transactions and Defendant's residence. Accordingly, the Affidavit provided a substantial basis from which the Montgomery District Court Judge could conclude that there was probable cause that a search would uncover evidence of wrongdoing at the Defendant's residence. Thus, the evidence resulting from the March 29, 2012 search was not obtained in violation of Defendant's Fourth Amendment rights and, therefore, his motion to suppress will be denied.

Nevertheless, even if the Court determined that the search warrant affidavit lacked the necessary probable cause under the Fourth Amendment, the "good faith" exception to the exclusionary rule applies to this case. While the exclusionary rule generally precludes use of

evidence obtained in violation of the Fourth Amendment, the Supreme Court in *United States v. Leon*, 468 U.S. 897 (1984), held that the exclusionary rule "should be modified so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Leon*, 468 U.S. at 905. According to the Sixth Circuit,

> The good faith exception to the exclusionary rule states that the fruits of a constitutionally infirm search need not necessarily be suppressed unless: (1) the warrant contained a knowing or reckless falsehood; (2) the issuing judge acted as a mere "rubber stamp" for the police; or (3) the warrant and the affidavit, even after extending appropriate deference to the issuing judge's determination, did not establish probable cause or possessed a technical deficiency such that the executing officers cannot reasonably assume the warrant to be valid.

*United States v. Logan*, 250 F.3d 350, 366 (6th Cir. 2001)(citing *Leon*, 468 U.S. at 922-23).

In this case, there is no evidence that any circumstances are present that would negate the good-faith exception. Defendant has not argued that Det./Sgt. Daniels gave a knowingly false affidavit or otherwise acted in bad faith in seeking the search warrant. Nor has Defendant alleged that the search warrant was issued by an improper or biased authority. The search warrant properly identifies the place to be search and was based on an Affidavit containing detailed information related to Det./Sgt. Daniels' investigation of Defendant, including evidence that the Defendant was arranging drug deals from his home and proceeding directly from his home to locations where he sold drugs to a CI. The warrant thus provides a sufficient link between the residence and drug activity such that a reasonably well-trained officer would not have known that the search was illegal. Moreover, the fruits of the search verify the accuracy of the information contained in the Affidavit. Accordingly, the good faith exception to the exclusionary rule applies in this case, and Defendant's motion to suppress the evidence obtained from the search will be denied.

III. CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** that the defendant's Motion to Suppress [DE #13] is **DENIED**.

This October 31, 2012.

Signed By:
*Karl S. Forester* KSF
United States Senior Judge